United States District Court
Southern District of Texas
**ENTERED**
June 17, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAMIRO GUERRA, | § | |
| (Inmate # 01714091), | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-24-2352 |
| | § | |
| DR. GUTIERREZ, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER
## GRANTING DR. GUTIERREZ'S MOTION TO DISMISS

Proceeding *pro se* and *in forma pauperis*, Harris County Jail inmate Ramiro Guerra, (Inmate # 1714091), filed an amended prisoner's civil-rights complaint under 42 U.S.C. § 1983. In that amended complaint, Guerra alleges that two jail medical providers—Dr. Orlando Gutierrez and Dr. David Solce—violated Guerra's constitutional rights after he broke his foot in January 2024. (Dkt. 10). At the Court's request, Guerra supplemented his complaint with a More Definite Statement of his claims. (Dkt. 12). Dr Gutierrez responded to Guerra's amended complaint with a motion to dismiss. (Dkt. 38). Guerra has not responded to the motion, and his time to do so has now expired. Having reviewed the pleadings and the motion, all matters of record, and the applicable law, the Court grants Dr. Gutierrez's motion to dismiss and dismisses Guerra's claims against him with prejudice.

## I.   BACKGROUND

On June 20, 2024, Guerra filed a civil rights complaint under § 1983 naming "Harris Health at Harris County Jail" as the only defendant. (Dkt. 1). Guerra alleged that "they" had failed to treat him for a broken foot that he sustained on January 14, 2024. (*Id.* at 4). He sought money damages to compensate him for his pain and suffering. (*Id.*). The Court dismissed Guerra's complaint because the only named defendant did not have a capacity to sue or be sued; however, the Court granted Guerra leave to file an amended complaint to name proper defendants if he could. (Dkt. 9).

On August 21, 2024, Guerra filed an amended complaint, naming Dr. Gutierrez and Dr. Solce as defendants. (Dkt. 10). Guerra alleged that Dr. Gutierrez "didn't give me the medical attention I needed" and that Dr. Solce "didn't send me to the hospital for medical treatment." (*Id.* at 3). Guerra claimed that because of these alleged failures, he was forced to keep walking on his broken foot, leading to additional injuries and ongoing severe pain. (*Id.* at 4). As relief, he asked the Court to order the defendants to "fix my foot" and compensate him for his pain and suffering. (*Id.*).

The Court ordered Guerra to provide a More Definite Statement of his claims. (Dkt. 11). In his response, Guerra alleges that on January 11, 2024, he jumped off his top bunk and landed wrong, causing him to break his right foot. (Dkt. 12, p. 2).

2/20

His foot quickly turned black and blue and became extremely swollen. (*Id.*). One of his fellow inmates alerted the pod officer of the incident, and the pod officer arranged to have a wheelchair sent down. (*Id.* at 2-3). A detention officer then wheeled Guerra to the medical clinic. (*Id.* at 3).

At the clinic, Dr. Gutierrez ordered X-rays of Guerra's foot, which were taken immediately at the jail infirmary. (*Id.* at 3-4). Dr. Gutierrez immediately reviewed the X-rays and told Guerra that he had fractured his heel. (*Id.* at 4). Dr. Gutierrez put a splint on Guerra's foot, issued him a set of crutches, and prescribed ibuprofen for the pain. (*Id.* at 4-5). When Guerra asked about going to the hospital, Dr. Gutierrez told him that he did not need to go to the hospital, but Dr. Gutierrez said he would schedule Guerra to be seen by an orthopedic physician "in a couple of days." (*Id.* at 6). Guerra alleges that he was "never called" about this appointment. (*Id.*).

On March 12, 2024, Guerra had an appointment with Dr. Solce, who is an orthopedic physician at the jail infirmary. (*Id.* at 7). At that appointment, Dr. Solce ordered additional X-rays, which were again taken at the jail infirmary. (*Id.*). After reviewing the X-rays, Dr. Solce told Guerra that there were two fractures in his heel and that the bones were not healing properly. (*Id.* at 7-8). Guerra still had his splint and his crutches, and Dr. Solce renewed his prescription for ibuprofen. (*Id.* at 8). Dr. Solce did not order any additional treatment for Guerra's foot, did not send him

to the hospital, and did not recommend surgery. (*Id.*).

On June 2, 2024, Guerra's foot turned purple and became swollen. (*Id.* at 9). Guerra denies that anything occurred around that time to cause the new swelling and discoloration. (*Id.*). Guerra went to the jail infirmary on his crutches, and he was taken to Memorial Hermann hospital, where he was seen by an orthopedic physician Guerra knows only as "Dr. Mike." (*Id.* at 9-10). Dr. Mike ordered X-rays, and after he reviewed them he gave Guerra a new splint for his foot, renewed his prescription for pain medication, and sent him back to the jail. (*Id.* at 10-11). Dr. Mike did not recommend surgery for Guerra's foot.

On July 18, 2024, Guerra saw another orthopedic physician at the jail infirmary named Dr. Fisher. (*Id.* at 11-12). Dr. Fisher prescribed a compression stocking for Guerra and told him that he needed to start putting weight on his foot. (*Id.* at 12). Dr. Fisher renewed Guerra's order for crutches and his prescription for ibuprofen. (*Id.*). Dr. Fisher also scheduled Guerra for an appointment with an orthopedic physician at Ben Taub Hospital. (Dkt. 10, p. 5).

On August 7, 2024, Guerra saw a female orthopedic physician at Ben Taub. (*Id.*). This doctor, whose name Guerra does not know, took new X-rays and then showed him where his foot was broken in two places.[1] (*Id.*). The doctor told Guerra

---

[1]Guerra alleges that this is the first time that he was told that his foot was "broken." Guerra apparently did not understand that a fracture is another term for a partial or complete
4/20

that he should have surgery on his foot but that it cannot be done until he is released from jail. (*Id.*).

Guerra alleges that while Dr. Gutierrez and Dr. Solce provided him with some treatment, they violated his constitutional rights because he was denied the treatment he should have received. (Dkt. 12, p. 13). Guerra alleges that he should have immediately been sent for surgery, but Dr. Gutierrez refused to refer him for surgery, saying that he needed to see an orthopedic physician first. (*Id.* at 15). Guerra alleges that when Dr. Solce saw him in March, he told Guerra that it was "too late" to have surgery. (*Id.*). Dr. Mike told Guerra that surgery would not help him. (*Id.*). It was not until August 2024 when the female orthopedic physician at Ben Taub agreed that Guerra needed surgery, but she would not perform it while Guerra was in jail because the jail could not properly manage his recovery. (*Id.*).

Guerra also alleges that Dr. Gutierrez violated his constitutional rights by failing to schedule him to see Dr. Solce in a timely manner. (*Id.* at 17). Guerra alleges that when he finally saw Dr. Solce two months later, Dr. Solce refused to send him to the hospital for the care he needed. (*Id.*). Guerra believes that he should have been sent to the hospital the day the injury occurred because "my right foot is broken and still to this day is broken." (*Id.* at 6). Guerra alleges that he is still in

break in a bone. *See* www.orthoinfo.aaos.org (visited June 16, 2025).

severe pain and still on crutches and that without surgery, he will be on crutches for "who knows how long." (*Id.* at 17-18).

After the initial screening required by 28 U.S.C. § 1915A, the Court ordered Dr. Gutierrez and Dr. Solce to respond to Guerra's claims against them. (Dkt. 13). Dr. Gutierrez responded to the amended complaint with a motion to dismiss.[2] (Dkt. 38). In his motion, Dr. Gutierrez contends that Guerra's claims against him in his official capacity are barred by sovereign immunity and that the claims against him in his individual capacity fail to state a claim upon which relief can be granted. (*Id.*). Guerra did not respond to Dr. Gutierrez's motion, and his time to do so has now expired.[3]

## II.    APPLICABLE LAW

### A.    Actions Under 42 U.S.C. § 1983

Guerra brings his claims against Dr. Gutierrez under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v.*

---

[2]Dr. Solce responded to Guerra's amended complaint in a separate motion to dismiss. (Dkt. 40). That motion will be addressed in a separate order.

[3]Under the Court's local rules, Guerra's failure to respond to the motion is considered a representation that he does not oppose the motion. *See* S.D. TEX. L.R. 7.4. However, because Guerra is proceeding *pro se*, the Court will address the merits of Dr. Gutierrez's motion.

*Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also*

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under

§ 1983, the plaintiff must (1) allege a violation of rights secured by the Constitution

or laws of the United States, and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S.

42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam).

The first element recognizes that "state tort claims are not actionable under federal

law; a plaintiff under [§] 1983 must show deprivation of a federal right." *Nesmith*

*v. Taylor,* 715 F.2d 194, 195 (5th Cir. 1983) (per curiam). The second element

means that generally only *state* actors—not private parties—can be liable for

violations of civil rights. *See Frazier v. Bd. of Tr. of Nw. Miss. Reg'l Med. Ctr.*,

765 F.2d 1278, 1283 (5th Cir. 1985).

### B.    Motion to Dismiss

Dr. Gutierrez moves to dismiss Guerra's amended complaint under Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Rule

12(b)(1) challenges the court's jurisdiction to hear the case. *See Ramming v. United*

*States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Such a motion is properly

granted when the court lacks the statutory or constitutional power to hear the case,

such as when the claims are barred by a state's sovereign immunity. *See High v.*

*Karbhari*, 774 F. App'x 180, 182 (5th Cir. 2019) (per curiam) (citing *Little v. KPMG*

*LLP*, 575 F.3d 533, 540 (5th Cir. 2009), and *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005)). Because a Rule 12(b)(1) motion challenges the court's jurisdiction, "[w]hen a Rule 12(b)(1) challenge is filed with other Rule 12 motions, the court should address the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, L.L.C. v. Becerra,* 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(6) is properly granted when the plaintiff's complaint fails to state a claim upon which relief can be granted. When a court considers a motion under Rule 12(b)(6), "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The district court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up).

But to survive a motion to dismiss under Rule 12(b)(6), the complaint must include specific facts, not conclusory allegations. *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020). The complaint must also allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Gomez*, 18 F.4th at 775. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). If the facts alleged are facially sufficient, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up). But if the complaint does not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

### C. *Pro Se* Pleadings

Because Guerra is proceeding *pro se*, the Court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But even under this lenient standard, *pro se* litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014). "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

## III.    DISCUSSION

Guerra's claims against Dr. Gutierrez arise under the Eighth Amendment. While Guerra seeks both money damages and injunctive relief, it is unclear from the amended complaint whether he seeks relief against Dr. Gutierrez in his official capacity, his individual capacity, or both. Therefore, the Court will address each of Guerra's requests for relief in turn.

### A.    Claims for Money Damages

#### 1.    The Claim Against Dr. Gutierrez in his Official Capacity

Dr. Gutierrez contends that any claim against him for money damages in his official capacity is barred by state sovereign immunity. State sovereign immunity bars actions against a state or state official for money damages unless Congress has abrogated such immunity or the state has specifically waived its immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). But Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Id.* And the State of Texas has not waived its sovereign immunity for purposes of § 1983 actions. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015) ("Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it. Texas has not consented by statute, and § 1983 does not abrogate state sovereign immunity.") (cleaned up).

10/20

The fact that Guerra has sued a state employee, rather than the State of Texas, does not change this analysis. When a state employee is sued in his or her official capacity, the employing entity is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity"); *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 785 (5th Cir. 2024). Dr. Gutierrez is an employee of the University of Houston, which contracts with Harris Health Systems to provide health care to detainees at the Harris County Jail. (Dkt. 38, p. 1). Under Texas law, state universities, including the University of Houston, are agencies of the state. *See* TEX. GOV'T CODE § 572.002(10)(B); TEX. EDUC. CODE § 61.003(8), (10); *see also U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501-02 (5th Cir. 2018); *Thomas v. Univ. of Houston*, 155 F. App'x 115, 117 (5th Cir. 2005) (per curiam). Therefore, university employees, like Dr. Gutierrez, are protected from claims for money damages against them in their official capacities by state sovereign immunity.

Guerra's claim for money damages against Dr. Gutierrez in his official capacity is construed as a claim against the State of Texas and is barred by state sovereign immunity. Dr. Gutierrez's motion to dismiss this claim is granted, and this claim is dismissed with prejudice under Rule 12(b)(1).

11/20

2.    The Claim Against Dr. Gutierrez in his Individual Capacity

Dr. Gutierrez contends that Guerra's amended complaint against him for money damages in his individual capacity fails to state a claim upon which relief can be granted.  Guerra's amended complaint, construed liberally, raises claims based on both deliberate indifference and delays in care.  The Court will consider each of these claims in turn.

a.    The Claim for Deliberate Indifference

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (cleaned up).  A prison official violates this duty when, whether by act or omission, he or she is deliberately indifferent to conditions that pose a substantial risk of serious harm to the inmate. *Id.* at 834.

To state a claim for a lack of adequate medical care, a prisoner seeking relief under § 1983 must allege facts showing that the jail medical provider acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam). To establish deliberate indifference, "a plaintiff must demonstrate that the official is aware that an inmate[ ] face[s] a substantial risk of serious harm and disregards that

12/20

risk by failing to take reasonable measures to abate it." *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (quoting *Farmer*, 511 U.S. at 837). But deliberate indifference is an "extremely high standard" to meet. *See Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Instead, the prisoner must allege facts showing that the jail medical provider "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quoting *Domino*, 239 F.3d at 756) (cleaned up).

The facts alleged in Guerra's amended complaint do not rise to the level of deliberate indifference. Guerra admits that Dr. Gutierrez ordered X-rays of his foot, reviewed those X-rays with him, diagnosed him with a fracture, provided him with a splint and crutches, and prescribed pain medication for him. When Guerra asked about going to the hospital for surgery, Dr. Gutierrez responded that Guerra would need to see the orthopedic physician first, and he agreed to set up that appointment. These facts, accepted as true at this stage of the proceedings, do not show that Dr. Gutierrez refused to treat Guerra, ignored his complaints, intentionally treated him incorrectly, or disregarded Guerra's serious medical needs. Instead, at most they

show that Guerra disagrees with the medical treatment he was provided. Even if Dr. Gutierrez's determination of how to treat Guerra's foot was mistaken, this would state a claim for negligence or medical malpractice that does not rise to the level of deliberate indifference necessary to allege a violation of the Eighth Amendment. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The allegations in Guerra's amended complaint do not state a claim for a constitutional violation based on deliberate indifference. Therefore, Dr. Gutierrez's motion to dismiss is granted, and Guerra's deliberate indifference claim is dismissed with prejudice under Rule 12(b)(6).

### b.    The Claim for Delays in Treatment

Guerra also appears to allege that Dr. Gutierrez violated his constitutional rights by failing to ensure that Guerra was seen by an orthopedic physician in a timely manner.

To be entitled to relief under § 1983 based on a delay in medical treatment, the prisoner must show that the jail medical provider's deliberate indifference resulted in a delay that caused the prisoner to suffer substantial harm. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017) (per curiam); *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). This requires the prisoner to allege facts showing that the
14/20

delay was specifically attributable to the medical provider defendant. *See, e.g., Jackson v. Gordy*, No. 2:16-cv-338, 2018 WL 1156013, at *12 (S.D. Tex. Jan. 8, 2018), *report and recommendations adopted*, 2018 WL 1122573 (S.D. Tex. Mar. 1, 2018), *aff'd*, 772 F. App'x 193 (5th Cir. 2019) (per curiam). It also requires the prisoner to allege facts showing that the delay resulted in substantial harm. *See Easter*, 467 F.3d at 463; *Ramirez v. Stacks*, 260 F. App'x 658, 660 (5th Cir. 2007) (per curiam) (affirming the dismissal of a complaint that alleged that the prisoner suffered a broken tibia and a delay in treatment, but which did not show that he suffered substantial harm because of the delay when X-rays after the delay did not show new acute problems). And while pain suffered during a delay in treatment can constitute substantial harm, *see Alderson*, 848 F.3d at 422, the plaintiff must show that the pain was sufficiently severe to be considered substantial. *Compare Richard v. Martin*, 390 F. App'x 323, 325 (5th Cir. 2010) (per curiam) (plaintiff's "neck pain, which resolved within a few weeks, and chronic mild back pain" were not sufficient to establish substantial harm resulting "from the alleged 10-day delay in seeing a nurse and/or the 20-day delay in being taken to a doctor"), *with Coleman v. Sweetin*, 745 F.3d 756, 765-66 (5th Cir. 2014) (per curiam) (finding substantial harm from a month-long delay in treatment for a broken hip during which the plaintiff "was in so much pain that he was unable to lie down in bed or use the toilet properly," pain overtook his entire body, he was "out of it" due to the pain, and doctors eventually

inserted four pins and a plate during hip surgery). But "[t]he fact of delay in itself is not sufficient to establish deliberate indifference." *Garcia v. Fed. Bureau of Prisons*, 459 F. App'x 458, 459 (5th Cir. 2012) (per curiam).

Even taking Guerra's allegations as true, he nevertheless does not allege facts showing that any delay by Dr. Gutierrez resulted in any harm. Guerra concedes that Dr. Gutierrez diagnosed him with a fractured foot, provided him with a splint and crutches, and prescribed pain medication in January 2024. Dr. Gutierrez told Guerra that any further treatment would be addressed by the orthopedic physician, and he told Guerra he would arrange for that visit. Guerra alleges that he did not see Dr. Solce, the orthopedic physician, until March 2024. While Guerra takes issue with the two-month delay in seeing Dr. Solce, he does not allege facts showing that any delay was caused by any actions or inactions of Dr. Gutierrez himself. Further, delays in receiving follow-up care generally do "not rise to the level of deliberate indifference." *Mathis v. Alexander*, 49 F.3d 728, 1995 WL 103646, at *3 (5th Cir. Mar. 3, 1995) (per curiam).

In addition, Guerra does not allege facts showing that he suffered substantial harm because of any delay in seeing Dr. Solce. Guerra alleges that Dr. Gutierrez should have immediately sent him to the hospital for surgery. But when Guerra saw Dr. Solce in March 2024, Dr. Solce did not believe that surgery was appropriate. When Dr. Mike saw Guerra at Memorial Hermann hospital in June 2024, Dr. Mike

16/20

did not believe that surgery was appropriate. And when Guerra was seen by Dr. Fisher in July 2024, he was still not recommended surgery. Guerra does not allege facts showing that an earlier visit with Dr. Solce would have resulted in a surgery recommendation, nor does he show that any alleged delay in healing is the result of a delay in seeing Dr. Solce.

Finally, Guerra concedes that Dr. Gutierrez prescribed pain medication for him on the day of the incident, and he has been prescribed pain medication continuously since that time. Guerra therefore does not allege facts showing that he was substantially harmed by suffering excessive pain due to any alleged delays in treatment.

In short, the facts alleged in Guerra's amended complaint do not show that Dr. Gutierrez was deliberately indifferent to Guerra's need for treatment or that any alleged deliberate indifference caused a delay in treatment that resulted in substantial harm. At most, the facts show that Guerra disagreed with the treatment Dr. Gutierrez provided. This is insufficient to show a violation of Guerra's constitutional right to adequate care, and his amended complaint fails to state a claim upon which relief can be granted. Dr. Gutierrez's motion to dismiss is granted, and Guerra's claim for money damages based on an alleged delay in treatment is dismissed with prejudice under Rule 12(b)(6).

17/20

**B.    Claims for Injunctive Relief**

    **1.    The Claim Against Dr. Gutierrez in his Official Capacity**

As with Guerra's claim for money damages, Dr. Gutierrez contends that Guerra's claim against him in his official capacity for injunctive relief is barred by state sovereign immunity.

Sovereign immunity plays a lesser role in claims for injunctive relief than it does in claims for money damages.  Sovereign immunity bars claims for injunctive relief against a state or state actor when those claims concern a state official's past actions rather than an ongoing violation of federal law.  *See Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  But sovereign immunity does not bar an action "for an injunction to stop ongoing violations of federal law." *McCraw*, 90 F.4th at 785 (quoting *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022)).  However, the scope of the injunctive relief available is narrow and is limited to an injunction requiring the state official to "conform their future conduct to the requirements of federal law." *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

Guerra's amended complaint alleges that jail medical providers, including Dr. Gutierrez, are continuing to violate his Eighth Amendment rights by denying him surgery on his foot.  To the extent that Guerra seeks an injunction to require Dr. Gutierrez to stop violating his constitutional rights in connection with his need for medical care, Guerra's claim could fall within the purview of the *Ex parte Young*

exception to state sovereign immunity.

But to be entitled to such an injunction, Guerra must allege facts showing that injunctive relief is necessary to correct an ongoing constitutional violation. As explained above, however, the facts alleged in Guerra's amended complaint, taken as true, do not show that Dr. Gutierrez either has violated or is violating Guerra's Eighth Amendment rights. In the absence of an ongoing constitutional violation, Guerra is not entitled to injunctive relief. Dr. Gutierrez's motion to dismiss is granted, and Guerra's claim for injunctive relief against Dr. Gutierrez in his official capacity is dismissed with prejudice for failing to state a claim under Rule 12(b)(6).

### 2.    The Claim Against Dr. Gutierrez in his Individual Capacity

To the extent that Guerra seeks injunctive relief against Dr. Gutierrez in his individual capacity, his claim is denied for the same reasons explained above. Because Guerra's amended complaint does not allege facts showing that that Dr. Gutierrez has violated or is violating his constitutional rights in connection with Guerra's medical treatment, Guerra has not stated a claim upon which relief can be granted. Dr. Gutierrez's motion to dismiss is granted, and Guerra's claims for injunctive relief against Dr. Gutierrez in his individual capacity are dismissed with prejudice under Rule 12(b)(6).

## IV.   CONCLUSION

Based on the above, the Court **ORDERS** as follows:

19/20

1. Defendant Dr. Gutierrez's motion to dismiss, (Dkt. 38), is **GRANTED**.

2. Guerra's action against Dr. Gutierrez is **DISMISSED with prejudice**.

   The Clerk will provide a copy of this Order to the parties.

   SIGNED at Houston, Texas on _____June 17_____, 2025.

                                     DAVID HITTNER
                              UNITED STATES DISTRICT JUDGE

20/20